UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| PEGGY PLEDGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 5:12-CV-484-F |
| ) | |
| UHS-PRUITT CORPORATION, ) | |
| THE OAKS AT MAYVIEW, A/K/A ) | |
| MAYVIEW CONVALESCENT, ) | |
| HOME INC., A/K/A MAYVIEW ) | |
| CONVALESCENT CENTER, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the motion to recuse [DE-8] filed by Plaintiff Peggy Pledger, in which she seeks recusal of the undersigned from the action, and the motion to dismiss [DE-9] filed by Defendants UHS-Pruitt Corporation ("UHS-Pruitt") and Mayview Convalescent Home, Inc. ("Mayview") (collectively, "Defendants"), in which they seek dismissal of the complaint filed by Plaintiff [DE-1]. Defendants filed no opposition to the motion to recuse. Plaintiff filed a response to the motion to dismiss, and Defendants filed no reply. The response times for both motions have elapsed, and therefore the motions are ready for disposition. For the reasons stated below, the court will DENY the motion to recuse and ALLOW in part and DENY in part the motion to dismiss.

## I. PROCEDURAL BACKGROUND

On June 22, 2007, Plaintiff, an African-American Jehovah's Witness over the age of 40, filed a complaint in this court against her then employer, Defendant Mayview, asserting various claims arising out of her employment. Specifically, Plaintiff alleged that: (1) she had been discriminated

against on the basis of her race, age, and religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and 42 U.S.C. § 1981; and (2) she has been retaliated against by her employer in violation of Title VII, the ADEA, and § 1981. On April 14, 2009, the court granted summary judgment in Defendant Mayview's favor on all such claims. *See Pledger v. Mayview Convalescent Home, Inc.*, No 5:07CV235-F, 2009 WL 1010428 (E.D.N.C. Apr. 14, 2009). Plaintiff appealed, and the court's ruling was affirmed by the Fourth Circuit. *See Pledger v. Mayview Convalescent Home, Inc.*, 374 F. App'x 431, 2010 WL 1538863 (4th Cir. Apr. 19, 2010).

On August 2, 2012, Plaintiff filed the instant complaint pro se. Plaintiff again asserts discrimination and retaliation claims pursuant to Title VII, the ADEA, and § 1981, as well as claims for negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED"). [DE-1.] Plaintiff alleges that she filed a charge of discrimination on February 1, 2012, based on retaliation for filing her previous case "and other issues, race and age" and that she received a right-to-sue letter on May 7, 2012. [*Id.* at 2.] Plaintiff seeks money damages for, among other things, pecuniary losses, emotional pain, mental anguish, punitive damages, and attorney's fees. [*Id.* at 6.]

On September 5, 2012, Plaintiff filed a motion for the undersigned to recuse himself from the action. Defendants did not respond to this motion. On October 4, 2012, Defendants filed a motion to dismiss. Defendants argue that dismissal is proper because this court lacks subject matter jurisdiction and Plaintiff's complaint fails to state a claim upon which relief can be granted. Plaintiff filed a response in which she states her opposition to Defendants' motion, although she does not specifically respond to any of Defendants' arguments.

## II. MOTION TO RECUSE

Plaintiff seeks the recusal of the undersigned from this action. Plaintiff states that Defendant Mayview is "well known throughout this judicial system" and "has rendered healthcare services to many politicians, prominent business persons, and jurists as well as cared for the needs of their friends and family." [DE-8 at 2.] Plaintiff further states that "[w]hen humans make judgments they can be faulty due to a sense of duty or familiarity." [*Id.*] Plaintiff argues that "Judge Fox had denied just relief to this plaintiff," and asks for "[t]he justice that Judge Fox administers not be allowed to continue." [*Id.*] Plaintiff does not cite to statutory authority to support her motion, nor does she assert any specific facts indicating bias other than the court's April 14, 2007, order granting summary judgment against her.

Pursuant to 28 U.S.C. § 455(a),[1] a federal judge shall recuse himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This issue is determined by an objective standard. As stated by the Fourth Circuit:

> [A] judge must disqualify himself whenever his impartiality might reasonably be questioned. In other words, disqualification is required if a reasonable factual basis exists for doubting the judge's impartiality. The inquiry is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial. A presiding judge is not, however, required to recuse himself simply because of unsupported, irrational or highly tenuous speculation. Put simply, the proper test to be applied is whether another with knowledge of all of the circumstances might reasonably question the judge's impartiality.

*United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003) (internal quotations omitted). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion," as such rulings

---

[1] Plaintiff's motion is not proper under 28 U.S.C. § 144 because it is not accompanied by the required affidavit and certificate of counsel of record stating that the affidavit is made in good faith. *See, e.g., Mathis v. Goldberg*, No. DKC 12-1777, 2013 WL 1232898, at *1 (D. Md. Mar. 25, 2013).

3

"[a]lmost invariably . . . are proper grounds for appeal, not for recusal." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Plaintiff argues that recusal is proper because the undersigned previously granted summary judgment on the claims she asserted in a prior complaint. Such a ruling does not constitute a valid basis for recusal. Plaintiff presents no other evidence that would cause a well-informed observer to question the impartiality of the undersigned. Accordingly, the motion to recuse will be DENIED.

### III. MOTION TO DISMISS

#### A. Standard of Review

Defendants assert their motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. When considering the pending motion to dismiss, the court is mindful that Plaintiff is proceeding pro se. "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quotation omitted). Notwithstanding the court's obligation to construe liberally a pro se plaintiff's allegations, however, the court cannot ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.").

#### 1. Rule 12(b)(1)

Because the existence of subject matter jurisdiction is a threshold issue, this court must address Defendants' motion to dismiss pursuant to Rule 12(b)(1) before addressing the merits of the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95-102 (1998); *accord Jones v. Am.*

4

*Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). It is a fundamental rule that a court has "jurisdiction to determine [its] jurisdiction." *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 27 (2d Cir. 2010) (citation omitted). Subject matter jurisdiction is both a constitutional and statutory requirement which restricts federal judicial power to a limited set of cases and controversies. Thus, "no action of the parties can confer subject matter jurisdiction upon a federal court." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). A defendant may challenge subject matter jurisdiction pursuant to Rule 12(b)(1) facially or factually. *See Wollman v. Geren*, 603 F. Supp. 2d 879, 882 (E.D. Va. 2009). If the defendant presents a facial challenge by arguing that the complaint fails to allege facts upon which subject matter jurisdiction can be based, all facts alleged in the complaint are presumed true. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Alternatively, if the defendant presents a factual challenge by arguing that jurisdictional facts alleged in the complaint are untrue, the court may consider extrinsic information beyond the complaint to determine whether subject matter jurisdiction exists. *See Kerns v. United States*, 585 F.3d 187, 192-93 (4th Cir. 2009). In both situations, the burden rests with the party seeking federal jurisdiction to prove that federal jurisdiction is proper. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

When a defendant challenges subject matter jurisdiction, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* A district court should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*; *see also Evans v. B.F.*

5

Case 5:12-cv-00484-F   Document 12   Filed 04/23/13   Page 5 of 20

*Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

### 2. Rule 12(b)(6)

The purpose of a motion to dismiss under Rule 12(b)(6), meanwhile, is to test the legal sufficiency of a complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson*, 551 U.S. at 94. However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citation omitted).

When addressing a motion to dismiss under Rule 12(b)(6), a court generally may not look outside the complaint unless it treats the motion to dismiss as a motion for summary judgment. *Wittholn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006). A court may, however, take judicial notice of matters in the public record without converting a motion to dismiss into one for summary judgment. *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). This includes prior or other court records. *See Wittholn*, 164 F. App'x at 396-97.

6

## B.   Plaintiff's Complaint[2]

The following facts are alleged in the complaint.[3] Plaintiff is an African-American over the age of 40 and a practicing Jehovah's Witness. [DE-1 at 1-2.] She was hired in 1997 to work as a part-time registered nurse for Defendant Mayview. [*Id.* at 3.] In October of 2009, Defendant Mayview was purchased by Defendant UHS-Pruitt. [*Id.*]

Until 2010, although employed as a part-time nurse, Plaintiff was required to work full-time hours without receiving full-time benefits.[4] [*Id.*] In July of 2010, she started to receive full-time benefits. [*Id.*]

From January of 2010 until January of 2012, Defendants "took an unauthorized thirty minutes from plaintiff's pay every day the plaintiff worked," during which time Plaintiff was still required to do work. [*Id.*] There is no allegation that this specific conduct was due to any discriminatory or retaliatory animus, nor is there an allegation that other employees outside of her protected classes were paid in a different manner.

After Defendant UHS-Pruitt took over, it hired a new Director of Nursing. [*Id.* at 4.] Consistent with Plaintiff's request, the new Director allowed Plaintiff to take Tuesdays off for

---

[2] As noted above, Plaintiff filed a complaint alleging race, age, and religious discrimination and retaliation in June of 2007. Summary judgment was granted in Defendant Mayview's favor in April of 2009.

[3] Although Plaintiff indicates two defendants in the caption of her complaint, in the body of the complaint she asserts her claims generally against "the defendant." [*See* DE-1.] For purposes of this motion, the court assumes Plaintiff is asserting her claims against both Defendants.

[4] The court notes that in Plaintiff's 2007 complaint, she alleged that Defendant Mayview retaliated against her by refusing to schedule her to work twenty hours per week. [No. 5:12CV235-F, DE-1 at 3.] The court stated in its order granting summary judgment that such an allegation was inconsistent with her later position that she was being scheduled to work full-time hours. [No. 5:12CV235-F, DE-41 at 35.] At any rate, as stated below, to the extent this claim is intended to serve as a basis for discrimination or retaliation in this action, it is subject to preclusion as it has been previously asserted, and procedurally barred because it occurred more than 180 days before Plaintiff filed a charge of discrimination.

7

religious services. [*Id.*]

In April of 2011, Plaintiff was promoted to "supervisor as needed." [*Id.*] However, Plaintiff alleges that "defendant neglected to in-service plaintiff for this position and then disciplined[5] her for not staying mute, nodding and executing the demands of a family member when that family member was extremely intense and within the plaintiff's personal space within single digit inches from plaintiff's face." [*Id.*] With regard to the failure to train aspect of this allegation, Plaintiff alleges that "not providing proper in-servicing for the positions [sic] of supervisor and giving her a job of supervisor" was "*negligence*" and that it was reasonably foreseeable such conduct would cause her emotional harm. [*Id.* at 5.] With regard to the discipline aspect of this allegation, although there is no specific allegation that this conduct was due to any discriminatory or retaliatory animus or specific reference to other employees who engaged family members in the same manner as Plaintiff but were not disciplined, Plaintiff does allege as follows:

> The plaintiff contends that the defendant knew or should have known that its agents were unjustly treating her differently than employees outside her protected class. The defendant's failure to act accordingly effectively ratified and condoned the discriminatory treatment of the plaintiff.

[*Id.* at 4.]

Plaintiff further alleges that "defendant . . . acted with reckless indifference to her constitutional and statutory right to work in an environment free from discrimination" and that it was reasonably foreseeable that such reckless conduct "would cause her to suffer severe emotional stress." [*Id.* at 5.] Finally, Plaintiff alleges that "defendant . . . engaged in willful and wonton

---

[5] Although not clearly stated in Plaintiff's complaint, it appears from her response in opposition to the motion to dismiss that the discipline that she alleges involved termination from her employment subsequent to the incident with a patient and her family. [DE-11.]

8

conduct which was atrocious and utterly intolerable . . . extreme and outrageous, bullying and exceeding all bounds of decency . . . intended to cause the plaintiff to suffer severe emotional distress . . . ." [*Id.*]

Plaintiff alleges that she filed a charge of discrimination on February 1, 2012, based on retaliation for her filing her previous case "and other issues," and that she received a right-to-sue letter on May 7, 2012. [*Id.* at 2.] The court notes that while the right-to sue letter is attached to the complaint, the alleged charge of discrimination does not appear to be anywhere in the record.[6]

Plaintiff generally asserts four causes of action. First, she asserts "retaliation, age and race discrimination, and disparate treatment in the terms and conditions of her employment" pursuant to Title VII, the ADEA, and § 1981. [*Id.* at 6.] Second, she asserts a claim for NIED. [*Id.*] Third, she asserts a claims for IIED. [*Id.*] Finally, plaintiff reasserts a claim of retaliation pursuant to Title VII, the ADEA, and § 1981. [*Id.*]

## C. Analysis

Defendants argue that Plaintiff's claims based on allegations asserted in the previous action are precluded by res judicata. [DE-9-1 at 6-8.] Further, Defendants argue that Plaintiff's claims based on allegations that occurred 180 days before Plaintiff filed a charge of discrimination are procedurally defaulted. [*Id.* at 9-10.] Defendants also argue that Plaintiff fails to state a claim under Title VII, the ADEA, or § 1983 because she does not include sufficient facts to support every element of a prima facie case under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). [*Id.* at 10-13.] With regard to Plaintiff's claim for IIED,

---

[6] Nevertheless, Defendants refer to the charge of discrimination in their memorandum in support of their motion to dismiss. [*See* DE-9-1 at 11 n.3.]

9

Defendants argue that their alleged conduct does not rise to the level of extreme and outrageous as required by North Carolina law. [*Id.* at 13-16.] Finally, with regard to Plaintiff's claim for NIED, Defendants argue that she fails to state a claim.[7] [*Id.* at 18-20.]

Plaintiff filed a response to Defendants' motion to dismiss. [DE-11.] However, her response does not address any of Defendants' arguments. Rather, it is largely composed of references to attached exhibits, including what appears to be a phone log kept by Defendants' HR Director from December 28, 2011 to January 2, 2012, a record of employee counseling dated December 28, 2011, a document marked "job description," and a document marked "code of conduct." These documents were not attached to the complaint and are not properly before the court, and therefore they will not be further considered.[8] Plaintiff also responds by stating that she is a pro se litigant unfamiliar with the law and that "[a] prima facie case has been established therefore this action should not be dismissed." [*Id.* at 7.]

---

[7] Defendants also argue that Plaintiff's NIED claim is barred by the exclusivity provision of the North Carolina Workers' Compensation Act ("NCWCA"), N.C. Gen. Stat. § 97-1 *et seq*. [DE-9-1 at 16-18.] As the court finds that Plaintiff fails to state an NIED claim, it declines to address this alternative argument.

[8] Although not properly before the court, all such exhibits have been reviewed. The court notes that nothing contained therein would affect the disposition of the pending motion to dismiss. Indeed, the arguments citing such documents would *undercut* Plaintiff's case if considered. For instance, with regard to her disparate-discipline claim, much of what Plaintiff references demonstrates only that Defendants believed Plaintiff acted in a hostile or unprofessional manner toward a patient and her family, and that Plaintiff was subsequently terminated. Also included in Plaintiff's response are references to other employees and Defendants' treatment of them. For example, with regard to her pay-docking claim, Plaintiff lists seven employees, including herself, who "did not receive a daily 'meal break.'" [DE-11 at 7.] Although the race, age, and any prior protected activity is not indicated for these employees, elsewhere in her response she states that at least one of those so listed is a Caucasian with over 30 years experience (and therefore, presumably, over the age of 40). [*Id.* at 2.] That Defendants treated this woman similarly to Plaintiff would weaken Plaintiff's race and age discrimination claims if considered. Plaintiff also recounts three incidents concerning her interactions with other employees. [*Id.* at 5-6.] Even if considered, such inter-employee incidents are not similar to that which Plaintiff was disciplined, namely, interaction with a patient and her family, and do not serve as a sufficient basis for an IIED or NIED claim.

10

As an initial matter, the court must determine what claims are being asserted before it can assess whether such claims are subject to preclusion, procedurally defaulted, or fail to state a claim upon which relief may be granted. Broadly construing the allegations contained in the complaint as a whole, it appears that Plaintiff intends to assert discrimination (race and age)[9] and retaliation (for filing the prior action) claims pursuant to Title VII, the ADEA, and § 1981 due to: (1) her working full-time hours but not receiving full-time benefits; (2) Defendants docking 30 minutes of her pay each day she worked; and (3) disparate discipline (i.e., discharge) subsequent to an incident with a patient and her family.[10] Further, it appears that Plaintiff intends to assert a claim for IIED generally based on the emotional distress caused by the alleged discrimination and retaliation, and a claim for NIED specifically based on Defendants' alleged negligent failure to train[11] her and generally based on the emotional distress caused by the alleged discrimination and retaliation.

   1.   **Res Judicata**[12]

---

[9] Although Plaintiff states in her complaint that she is a member of the Jehovah's Witness faith, it does not appear that she asserts any claims of religious discrimination.

[10] Plaintiff also states in her response that she was instructed not to speak to a certain patient and her family, and that a Caucasian nurse was not so instructed. [DE-11 at 2-3.] However, it does not appear from the complaint that the act of instructing Plaintiff not to interact with a patient and her family is asserted as a basis for discrimination or retaliation, and therefore is not considered above. The court notes that if such a basis is intended, it would likely fail because, in and of itself, such an instruction did not reduce her pay, job title, level of responsibility, or opportunity for promotion, and is therefore not an adverse employment action sufficient to maintain a claim under Title VII, the ADEA, or § 1983. *See Harman v. Unisys Corp.*, 356 F. App'x 638, 641 (4th Cir. 2009) (finding that a "district court correctly held that [the plaintiff's] allegations failed to establish that she suffered an adverse employment action sufficient to state a claim for disparate treatment based on her race, age or gender").

[11] Plaintiff consistently refers to Defendants' failure to train her as "negligence," or variations of the word negligence (e.g., "neglected"). [DE-1 at 4-5.] Accordingly, the court does not construe the complaint as alleging intentional discrimination or retaliation based on Defendants' alleged failure to train her.

[12] In her response, Plaintiff states that she resubmitted the "previous complaints" to show how long it took Defendant to remedy her prior grievances. [DE-11 at 3.] It is unclear whether or not she intends to reassert such claims in this action. Accordingly, to the extent she does, the court includes this section to

11

Under the doctrine of res judicata, or claim preclusion, a prior judgment on the merits between the same parties precludes litigation of matters that were or might have been adjudicated in the earlier suit. *In re Varat Enters., Inc.*, 81 F.3d 1310, 1314-15 & n.5 (4th Cir. 1996) (noting that the term "res judicata" sometimes is used interchangeably with the term "claim preclusion"). That is, the doctrine posits that if a later case arises from the same cause of action as an earlier case, then the prior judgment bars litigation of every matter already adjudicated, as well as every claim that might have been presented at that time. *Id.* at 1315; *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 43 (4th Cir. 1990). The following three elements must be met to satisfy claim preclusion: (1) a judgment on the merits in the prior suit, rendered by a court of competent jurisdiction; (2) that resolves claims by the same parties or their privies; and (3) a subsequent suit based on the same cause of action. *See Varat Enters.*, 81 F.3d at 1315; *Aliff*, 914 F.2d at 42. "In a claim preclusion context, privity generally involves a person so identified in interest with another that he represents the same legal right." *Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 644 (4th Cir. 2011) (quotation omitted).

Plaintiff alleges discrimination and retaliation claims pursuant to Title VII, the ADEA, and § 1981 based on her working full-time hours but not receiving full-time benefits. These claims constitute the same causes of action based on the same facts asserted in Plaintiff's 2007 action. The court's April 14, 2009, order was a final judgment on the merits disposing of such claims. Defendants in this action were either parties or in privity with parties in the 2007 action. Accordingly, all such claims are barred by res judicata, and the court will ALLOW Defendants' motion to dismiss these claims.

2. **Procedural Default**

---

make clear such claims are precluded.

12

Case 5:12-cv-00484-F   Document 12   Filed 04/23/13   Page 12 of 20

To state a claim under Title VII or the ADEA, a plaintiff must first exhaust her administrative remedies by filing a timely charge of discrimination with the EEOC. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); *Hospodor v. Burlington Indus., Inc.*, 205 F.3d 1333, 2000 WL 203933, at *1 ("Pursuant to the ADA, the ADEA, and Title VII, an employee cannot seek redress in federal court for an employer's alleged discriminatory conduct unless [s]he filed a charge of discrimination with the EEOC . . . ."). To be timely, a charge of discrimination must be filed within 180 days after the alleged discrimination occurred. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(A); *see E.E.O.C. v. Commercial Office Prods. Co.*, 486 U.S. 107, 110 (1988); *Hospodor*, 205 F.3d 1333, 2000 WL 203933, at *1. The allegations contained in the EEOC charge "generally operate to limit the scope of any subsequent judicial complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) (citation omitted). "If the claims raised . . . exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (quotation omitted). Consequently, the Fourth Circuit has held that "if the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will also be procedurally barred." *Id.* (citation omitted). "Federal courts do not have subject matter jurisdiction over discrimination claims that are not raised in a charge of discrimination." *Casey v. Plastic Omnium Auto Exterior*, LLC, No. 8:11-1432-HMH-KFM, 2012 WL 6966714, at *5 (D.S.C. Nov. 30, 2012).

Plaintiff alleges discrimination and retaliation claims pursuant to Title VII and the ADEA based on her working full-time hours but not receiving full-time benefits. However, based on the allegations of the complaint, full-time benefits were provided in July of 2010. Therefore, all such

13

claims occurred prior to July of 2010, a month that is more than 180 days before the filing of the charge of discrimination in February of 2012. Accordingly, as an alternative basis to dismiss these claims, the court finds that they are procedurally barred and will ALLOW Defendants' motion to dismiss these claims.

As noted above, Plaintiff's charge of discrimination alleged to have been filed on February 1, 2012, does not appear to be in the record. Accordingly, no evaluation as to whether Plaintiff's remaining Title VII and ADEA claims were sufficiently asserted in that charge has been undertaken by the court. If any remaining claim was not so asserted, the court may lack subject matter jurisdiction over it. Pursuant to Rule 12(h)(3), if the court determines at any time that it lacks subject matter jurisdiction, it must dismiss the action.

### 3. Failure to State a Claim

#### a. Discrimination and Retaliation Claims

Title VII makes it an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Similarly, the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Furthermore, the Title VII antiretaliation provision forbids employer actions that "discriminate against" an employee because she has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59

14

(2006). Finally, § 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459-60 (1975).

In the Fourth Circuit, courts apply the same standards used in Title VII discrimination or retaliation claims when evaluating claims arising under the ADEA or § 1981. *See Love–Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) (stating that the elements required to establish a case under § 1981 and Title VII are the same); *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 238-41 (4th Cir. 1982) (adopting the framework used in Title VII litigation for use in ADEA cases). Typically, such claims rely on the familiar burden-shifting scheme set forth in *McDonnell Douglas*, and in order to survive summary judgment a plaintiff must initially establish a prima facie case of discrimination or retaliation. *See Parish v. Siemens Med. Solutions USA, Inc.*, 429 F. App'x 216, 217-18 (4th Cir. 2011) (reviewing a district court's order allowing summary judgment and stating "[a]bsent direct evidence of intentional discrimination, Title VII . . . claims are analyzed under the burden-shifting framework established in *McDonnell Douglas* []." (citation omitted)). However, *at the pleading stage*, claims of discrimination or retaliation that satisfy any timing and exhaustion requirements need not satisfy the *McDonnell Douglas* framework. *See Harman v. Unisys Corp.*, 356 F. App'x 638, 640 (4th Cir. 2009) ("[T]he plaintiff need not plead facts that constitute a prima facie case under the framework of *McDonnell Douglas* . . . in order to survive a motion to dismiss."). Nevertheless, a plaintiff must still allege facts sufficient to state a claim, and "conclusory allegations are insufficient to defeat a motion to dismiss." *Id.* at 640-41.

In this case, pursuant to the above cited case law, the court disagrees with Defendants' argument that Plaintiff must allege sufficient facts to establish a prima facie case of discrimination or retaliation under the burden-shifting analysis set forth in *McDonnell Douglas* to survive the

motion to dismiss. Nevertheless, with regard to Plaintiff's claims based on Defendants' action of docking 30 minutes of her pay each day she worked, the court finds that there is no specific allegation that this action was taken because she is African-American, over the age of 40, or because she engaged in prior protected activity. To the extent she attempts to include this claim in her broad statement of discrimination and retaliation "in the terms and conditions of her employment" [DE-1 at 6], such general and conclusory allegations are insufficient to satisfy her burden to provide the grounds of her entitlement to relief. Accordingly, the court will ALLOW in part Defendants' motion to dismiss with respect to such claims.

Plaintiff also appears to assert discrimination and retaliation claims for the discipline (i.e., discharge) she allegedly received subsequent to her interaction with a family member. Such discipline is alleged to have occurred in 2011 (or possibly 2012), after conclusion of the prior case and potentially within 180 days of Plaintiff's charge of discrimination. However, due to the nature of Plaintiff's pro se complaint, Defendants, understandably, do not address this particular discipline as a possible basis for discrimination or retaliation. Rather than address the issue in this order (without the benefit of the parties' insight on the matter), the court will DENY in part the motion to dismiss and extend the deadline by which Defendants may file an answer, file a motion to dismiss, or otherwise respond. If Defendants elect to file a motion to dismiss, they may rely on any argument available to them, including those raised in the instant motion to dismiss.

**b. IIED**

Plaintiff asserts a claim of IIED generally based on the emotional distress caused by the alleged discrimination and retaliation. Under North Carolina law, the essential elements of IIED are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe

16

emotional distress to another." *Zenobile v. McKecuen*, 548 S.E.2d 756, 760 (N.C. Ct. App. 2001) (citation omitted). The second element may be stated by allegations that "the defendant acted with 'reckless indifference to the likelihood' that his or her acts 'will cause severe emotional distress.'" *Chapman By & Through Chapman v. Byrd*, 475 S.E.2d 734, 739 (N.C. Ct. App. 1996) (quoting *Dickens v. Puryear*, 276 S.E.2d 325, 335 (N.C. 1981)).

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Chidnese v. Chidnese*, 708 S.E.2d 725, 738 (N.C. Ct. App. 2011) (quotation omitted). With regard to the first element, conduct is extreme and outrageous "when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," and the determination whether the complained of conduct "rises to the level of extreme and outrageous behavior is a question of law." *Id.* (quotations omitted). Most adverse employment actions, save for certain types of sexual harassment, do not qualify as extreme and outrageous. *See, e.g., Pardasani v. Rack Room Shoes, Inc.*, 912 F. Supp. 187, 192 (M.D.N.C. 1996) (finding that plaintiff who alleged that he was given "poor performance evaluations, not given promotions which were given to others, excluded from training and finally terminated from his employment" did not allege conduct that rose "to the level sufficient to exceed all bounds usually tolerated by decent society").

After reviewing thoroughly Plaintiff's complaint, the court agrees with Defendants that a claim for IIED is not adequately asserted in this employment action. Indeed, none of the alleged

discriminatory and retaliatory conduct of Defendants (including disparate discharge, docking pay, and failure to provide full-time benefits) rises to a level sufficient to maintain a claim for IIED. Accordingly, the court will ALLOW the motion to dismiss Plaintiff's claim for IIED.

### c. NIED

Finally, Plaintiff alleges a claim of NIED specifically based on Defendants' negligent failure to train her, and generally based on the emotional distress caused by the discrimination and retaliation. A claim for NIED "has three elements under North Carolina law: (1) negligent conduct by defendants (2) where it was reasonably foreseeable that such conduct would cause and did in fact cause (3) severe emotional distress." *Cherry v. Perdue Farms, Inc.*, No. 2:10CV23-FL, 2010 WL 5437222, at *5 (E.D.N.C. Dec. 27, 2010) (citing *McAllister v. Ha*, 496 S.E.2d 577, 582-83 (N.C. 1998)). However, a claim for negligent infliction of emotional distress should not survive a motion to dismiss if the claim is based on alleged discriminatory or retaliatory conduct, which is inherently intentional. *See Thomas v. N. Telecom Inc.*, 157 F. Supp. 2d 627, 637 (M.D.N.C. 2000) ("Plaintiff[]'s allegations in this case charge nothing but intentional acts by Defendant. Therefore, Plaintiff fails to state a claim for negligent infliction of emotional distress." (citing *Mitchell v. Lydall, Inc.*, No. 93-1374, 1994 WL 38703, at **3-4 (4th Cir. Feb. 10, 1994) (finding that the plaintiff's complaint failed to state a claim for NIED when it contained "merely a single, conclusory allegation that [the defendant] was negligent" but that "the material factual allegations charge nothing but intentional acts"))); *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 545 (E.D.N.C. 2008) ("[T]he complaint describes a course of alleged intentional discrimination and retaliation. . . . As such, [the plaintiff] fails to state a NIED claim under North Carolina law." (citations omitted)). Furthermore, a plaintiff must allege specific facts that it was reasonably foreseeable that a

18

defendant's conduct would cause emotional harm, and failure to do so serves as a basis for dismissal. *See Bratcher*, 545 F. Supp. 2d at 545-56 ("'Presumably, any termination will cause a discharged employee some degree of emotional upset.' To state a claim for NIED, however, a plaintiff must allege facts that indicate the 'defendant should have reasonably foreseen that plaintiff would react in any way other than the usual anger and disappointment associated with being discharged.'" (quoting *Barber v. The Family Ctr., Inc.*, 3:04CV258-W, 2006 WL 3246608, at *2 (W.D.N.C. Nov. 6, 2006))). Finally, North Carolina does not recognize NIED claims for run-of-the-mill emotional distress, but rather for *severe* emotional distress.

> Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.

*Waddle v. Sparks*, 414 S.E.2d 22, 27-28 (N.C. 1992) (quotation omitted).

In this case, Plaintiff fails to allege adequately the third element, that she has suffered the kind of emotional distress necessary to maintain a claim for NIED. Rather, she merely alleges in a conclusory manner that she suffered "chronic anxiety, chronic depression, fear, headaches, insomnia, 'nervous stomach,' and stress." [DE-1 at 4.] Further, to the extent Plaintiff bases her NIED claim on intentional discrimination or retaliation, such a claim fails because she does not adequately allege the first element. That is, such discriminatory and retaliatory conduct is alleged to be comprised of intentional, not negligent, acts. Finally, with regard to Plaintiff's assertion that Defendants failed to train her, such a claim fails because she does not adequately allege the second element. That is,

19

Plaintiff does not allege any facts that indicate it was reasonably foreseeable to Defendants that she would suffer more than the typical stress and strain generally associated with difficult employment situations. Accordingly, the court will ALLOW Defendants' motion to dismiss Plaintiff's claim for NIED.

## IV. CONCLUSION

For the above stated reasons, it is hereby ORDERED that:

1. Plaintiff's motion to recuse [DE-8] is DENIED;

2. Defendants' motion to dismiss [DE-9] is DENIED in part with respect to Plaintiff's Title VII, ADEA, and § 1981 claims of discrimination (age and race) and retaliation (for filing the prior action) based the discipline (i.e., discharge) she allegedly received subsequent to her interaction with a family member, and ALLOWED in all other respects; and

3. Within **14 days** of the date of this order, Defendants shall file an answer, file a motion to dismiss, or otherwise respond to the claims remaining in Plaintiff's complaint. If Defendants file a motion to dismiss, within **14 days** of such a filing Plaintiff may file a response.

SO ORDERED

This the 22 day of April, 2013.

JAMES C. FOX
Senior United States District Judge